IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONIQUE MILBOURNE-HUNTER, :
:
    Plaintiff, : CIVIL ACTION
:
v. :
: NO. 11-cv-2264
OFFICER RUSSELL C. HITTLE; :
SUPERINTENDENT ANDREW W. CHAMBERS, :
:
    Defendants. :

## MEMORANDUM AND ORDER

Joyner, C.J.                                                               November 13, 2012

Before the Court is the Defendant's Motion for Summary Judgment (ECF No. 28). For the reasons set forth in this Memorandum, the Defendant's Motion is GRANTED.

### I. BACKGROUND

Officer Russell C. Hittle, the only remaining Defendant in this action, is a police officer for the Tredyffrin Township Police Department. The gravamen of the Plaintiff's claims against the Defendant is that the Defendant unlawfully stopped her car on U.S. Route 202 in Chester County, Pennsylvania, then unlawfully detained her and impounded her car. Based on this conduct, the Plaintiff brought this action, asserting a claim for violations of her Fourth Amendment rights under 42 U.S.C. § 1983 and state law claims for false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional

1

distress.

On March 30, 2009, Officer Hittle was alone in his patrol car and stopped on the median of U.S. Route 202. (Hittle Dep. at 20:5-21:7 (May 9, 2012).) Upon seeing the Plaintiff driving between one and two car lengths behind the vehicle in front of her (Milbourne-Hunter Dep. at 32:24-33:14 (May 9, 2012)), Officer Hittle pulled into traffic behind her (Hittle Dep. at 27:7-28:9 (May 9, 2012)). Officer Hittle intended to stop the Plaintiff because he had determined that she was following the vehicle in front of her too closely. Id. at 27:11-14.

Upon entering the highway and following the Plaintiff, Officer Hittle activated his Vascar Plus speed timing device. Id. at 28:10-29:2. Using the device, Officer Hittle determined that the Plaintiff was traveling at 67 miles per hour. (Tredyffrin Township Police Department Incident Report Form No. 43-09-110762 (the "Police Report") at 3.) The speed limit on the relevant section of U.S. Route 202 is 55 miles per hour. Id.

Officer Hittle signaled for the Plaintiff to pull over, and she complied. (Milbourne-Hunter Dep. at 34:10-35:14 (May 9, 2012).) The Plaintiff provided her operator's license and vehicle registration to Officer Hittle.[1] Id. at 37:1-4. At this

---

[1] It is undisputed that the Plaintiff provided Officer Hittle with a valid Maryland operator's license. (Milbourne-Hunter Dep. at 100:24-101:24 (May 9, 2012).) It is also undisputed that, although the Plaintiff's Maryland operator's license was valid as of March 30, 2009, her Pennsylvania operator's license was suspended as of March 30, 2009. Id. Finally, it is undisputed that Officer Hittle did not warn or cite the Plaintiff based on her driving

2

time, Officer Hittle observed that the Plaintiff's vehicle contained a number of air fresheners which, collectively, gave off the odor of a "cover agent." (Hittle Dep. at 47:17-48:8 (May 9, 2012).) Officer Hittle also observed a compartment, which he termed a "void," in the roof of the vehicle behind the sunroof. Id. at 48:9-49:1. Finally, Officer Hittle observed that the Plaintiff behaved as though she was nervous and that she displayed certain religious artifacts, id. at 49:3-12, and also noted some inconsistencies in her responses to his questions, id. at 54:9-55:13.

Based on these observations, and on his training in drug interdiction, Officer Hittle suspected the Plaintiff of transporting narcotics. Id. at 49:22-53:3. After returning to his police vehicle, Officer Hittle contacted his supervisor, received permission to contact a K-9 search unit, and requested that a K-9 search unit come to the location of the traffic stop for a search. Id. at 56:2-57:4. At some point, Officer Hittle also gave the Plaintiff his business card. (Milbourne-Hunter Dep. at 49:11-51:3 (May 9, 2012).) The phrase "For he is a minister of God, a revenger to execute wrath upon him that doeth evil," a portion of the Bible verse Romans 13:4, appears at the bottom of the card. (Ex. L, Hittle Business Card.)

After some 45 minutes had passed, both Officer Hittle's

---

with a suspended Pennsylvania operator's license. (Hittle Dep. at 99:16-18 (May 9, 2012); Police Report at 2.)

supervisor and the K-9 search unit arrived. (Milbourne-Hunter Dep. at 37:20-39:17 (May 9, 2012).) Officer Hittle then asked the Plaintiff to get out of her car, telling the Plaintiff that he suspected her of transporting narcotics. Id. at 37:5-19. According to the Plaintiff, Officer Hittle made this request while referring to her as "scum" and saying that she "look[ed] like the people that take drugs in and out of my community." Id. at 37:7-14.

The K-9 search officer then walked his dog around the Plaintiff's car. (Paris Aff. ¶ 7.) The dog alerted, meaning that he detected the scent of narcotics, twice near the front driver's side door of the Plaintiff's vehicle. Id. ¶¶ 8-9. Officer Hittle then had the Plaintiff's car towed in order to conduct a full search pursuant to a search warrant. (Hittle Dep. at 73:3-74:4 (May 9, 2012).) Officer Hittle told the Plaintiff to contact him the following day at the telephone number listed on his business card in order to retrieve the car. (Milbourne-Hunter Dep. at 49:11-51:3 (May 9, 2012).) Officer Hittle's supervisor drove the Plaintiff to a nearby restaurant, where a friend met her and drove her home. Id. at 46:7-49:10.

Officer Hittle obtained a search warrant for the Plaintiff's car the following day. (Hittle Dep. at 73:14-76:14 (May 9, 2012).) The three officers involved in the traffic stop, as well as the same K-9 search unit dog, searched the car. Id. at 76:15-

4

78:18. Although the search revealed some indications that someone had previously used the car to transport narcotics, the officers found no narcotics during the search. Id. at 91:11-93:22. When the Plaintiff called later that day, Officer Hittle told her she could collect her vehicle, which she did. (Milbourne-Hunter Dep. at 78:10-80:1 (May 9, 2012).) The Plaintiff faced no criminal charges arising out of the incident or the subsequent investigation. (Hittle Dep. at 97:3-99:12, 108:21-109:4 (May 9, 2012).)

The Plaintiff commenced the present action against the Defendants on March 30, 2011. The parties subsequently stipulated to the dismissal of certain of the Plaintiff's claims against Officer Hittle and all of the Plaintiff's claims against the other named Defendants. (Stipula. to Dismiss at 1-2.) The Plaintiff's remaining claims are a Fourth Amendment claim for unlawful search and seizure pursuant to 42 U.S.C. § 1983 (Count I) (Compl. ¶¶ 29-34), as well as state law claims for false imprisonment (Count II), id. ¶¶ 35-38, negligent infliction of emotional distress (Count III), id. ¶¶ 39-40, and intentional infliction of emotional distress (Count IV), id. ¶¶ 41-42.

## II. STANDARD OF REVIEW

Upon considering a motion for summary judgment, the Court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted).

## III. DISCUSSION

### A. Fourth Amendment Unreasonable Search and Seizure

Summary judgment is appropriate on the Plaintiff's § 1983 claim based on Fourth Amendment violations. The record presents no genuine issues of material fact remaining for trial with regard to whether Officer Hittle acted within the confines of the Fourth Amendment when he stopped the Plaintiff based on a traffic violation, detained her in order to investigate whether she was transporting narcotics, and impounded her vehicle based on a drug

dog's positive alert to the presence of narcotics in the vehicle. We therefore conclude that no reasonable juror could return a verdict in the Plaintiff's favor on her § 1983 claim.

*1. Traffic Stop*

In order to justify a traffic stop, an officer must have reasonable suspicion that a driver has violated a traffic law or is engaged in some other criminal activity. See United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006). "[A]n officer need not be factually accurate in her belief that a traffic law has been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact 'does not violate the Fourth Amendment.'" Id. at 398 (quoting United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003)).

Here, it is undisputed that Officer Hittle's Vascar Plus speed timing device measured the Plaintiff traveling 67 miles per hour when the posted speed limit was 55 miles per hour. (Police Report at 3.) Even were we to assume that the device malfunctioned and credit the Plaintiff's testimony that she was not, in fact, speeding (see Milbourne-Hunter Dep. at 29:4-9 (May 9, 2012)), the undisputed record evidence shows that Officer Hittle reasonably believed the Plaintiff to be speeding at the time he initiated the traffic stop. No reasonable juror, on this record, could conclude that Officer Hittle violated the

7

Plaintiff's Fourth Amendment rights by stopping the Plaintiff for a traffic violation.

2. *Delay Prior to Dog Sniff*

A proper traffic stop may become unlawful "if [the stop] is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Id. At the same time, an officer may lawfully inquire into matters unrelated to the stop "so long as those inquiries do not measurably extend the duration of the stop," Arizona v. Johnson, 555 U.S. 323, 333 (2009), and "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003).

Here, unless supported by reasonable suspicion to believe that the Plaintiff participated in some other criminal activity, Officer Hittle's decision to extend the traffic stop for 45 minutes violated her Fourth Amendment rights. The principal facts which Officer Hittle cited in his deposition as giving rise to his suspicion that the Plaintiff was involved in the

transportation of narcotics are undisputed:[2] (1) the Plaintiff's vehicle had a number of air fresheners in it, giving off a strong covering odor (Hittle Dep. at 47:17-48:8 (May 9, 2012)); (2) the car had a compartment behind the sunroof, id. at 48:9-49:1; and (3) Officer Hittle observed that the Plaintiff behaved as though she was nervous and that she displayed certain religious artifacts, id. at 49:3-12.

Based on these undisputed facts, we conclude, as a matter of law, that Officer Hittle had a sufficiently reasonable, articulable basis to believe that the Plaintiff was engaged in drug trafficking to detain her for longer than necessary to effect the original purpose of the stop. No reasonable juror, on this record, could conclude that Officer Hittle violated the Plaintiff's Fourth Amendment rights by prolonging the traffic stop beyond the time necessary to effect its original purpose.

3. *Impoundment of the Vehicle and Subsequent Search*

"It is . . . well-established that, looking at the totality of the circumstances, a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant." United States v. Pierce, 622 F.3d 209, 213 (3d Cir. 2010) (internal citations

---

[2] The Plaintiff's opposition to the Defendant's Motion challenges these facts only by stating that they are for the jury to determine. (Pl.'s Response at 3-6.) Without citation to any record evidence tending to suggest that these factual assertions are inaccurate, these facts are not adequately disputed for purposes of Rule 56 and do not create any genuine, triable issues of fact. See Saldana, 260 F.3d at 232.

omitted). Because the record supports no factual dispute about whether the dog alerted upon sniffing the Plaintiff's car, it follows that no dispute exists about whether Officer Hittle had probable cause to impound the car.[3] No reasonable juror, on this record, could conclude that Officer Hittle violated the Plaintiff's Fourth Amendment rights by impounding the car for a full search after the dog alerted to the presence of narcotics.[4]

## B. False Imprisonment

"The elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. 2010). Because we have already concluded that no triable issues exist as to whether Officer Hittle lawfully stopped and detained the Plaintiff and impounded her vehicle, summary judgment is appropriate in Officer Hittle's favor on her false imprisonment claim.

## C. Negligent Infliction of Emotional Distress

"A plaintiff asserting a claim for negligent infliction of emotional distress in Pennsylvania must establish at least one of the following four elements: (1) that the defendant had a contractual or fiduciary duty toward him, (2) that plaintiff

---

[3] We find further support for this conclusion from the undisputed fact that a magistrate, upon recitation of this evidence in a search warrant affidavit which Officer Hittle drafted, issued a search warrant for the car. (Hittle Dep. at 73:14-76:14 (May 9, 2012).)

[4] Similarly, on the basis of the dog's alert, we conclude that no reasonable juror could conclude that Officer Hittle violated the Plaintiff's Fourth Amendment rights when he searched the Plaintiff's purse and insisted on keeping the Plaintiff's child's car seat in the vehicle for impoundment.

10

suffered a physical impact, (3) that plaintiff was in a 'zone of danger' and at risk of an immediate physical injury, or (4) that plaintiff had a contemporaneous perception of tortious injury to a close relative." Periera v. Lizzio, No. 3:09-CV-1024, 2012 WL 1205750, at *5 (M.D. Pa. Apr. 11, 2012) (citing Doe v. Phila. Cmty. Health Alternatives AIDS Task Force, 745 A.2d 25, 27 (Pa. Super. 2000)). The Plaintiff points to no record evidence creating a material factual dispute about any of these four elements. We therefore conclude that no genuine dispute exists with respect to this essential element of the Plaintiff's claim for negligent infliction of emotional distress, and summary judgment is proper.

D. Intentional Infliction of Emotional Distress

In Pennsylvania, intentional infliction of emotional distress liability attaches to "a person who by extreme and outrageous conduct intentionally or recklessly causes severe or emotional distress to another." Carson v. City of Phila., 133 Pa. Commw. 74, 81, 574 A.2d 1184 (1990) (citing Restatement 2d of Torts, § 46). A police officer who acts reasonably and within the legal bounds of his authority during the course of a lawful investigation does not engage in the necessary "extreme and outrageous conduct." See Manley, 997 A.2d at 1241. Because Officer Hittle acted as such, it follows that no genuine factual disputes exist and that intentional infliction of emotional

distress liability does not attach on this record.[5] Summary judgment is proper.

## IV. CONCLUSION

For the aforementioned reasons, the Defendant's Motion for Summary Judgment is granted as to all of the Plaintiff's claims. An appropriate order follows.

---

[5] To the extent that the Plaintiff argues that Officer Hittle's business card displaying the Bible verse referring to Officer Hittle's "wrath" upon those that "doeth evil" (see Ex. L, Hittle Business Card), creates a disputed issue with respect to whether Officer Hittle's conduct was sufficiently extreme and outrageous, we disagree. Reasonable minds may differ about whether such language properly belongs on the business card of a law enforcement officer. (See Hittle Dep. at 107:3-4 (May 9, 2012) ("I was advised to remove my business cards from circulation.").) But this conduct certainly does not so exceed the bounds of conduct tolerated by our society as to constitute a sufficiently extreme and outrageous act which could support intentional infliction of emotional distress liability. See Pellegrino v. United States Transp. Sec. Admin., 855 F. Supp. 2d 343, 359 (E.D. Pa. 2012) (collecting cases).